JUDGE CARTER

Bennett, Giuliano, McDonnell & Perrone, LLP
Attorneys for Plaintiff
PROGRESS BULK CARRIERS
494 Eighth Avenue, 7th Floor
New York, New York 10001
Telephone:   (646) 328-0120
Facsimile:    (646) 328-0121
William R. Bennett, III (WB 1383)
wbennett@bgmplaw.com



12 CIV 0264

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
PROGRESS BULK CARRIERS,                               12-CV

                                    Plaintiff,

-against-

AMERICAN STEAMSHIP OWNERS MUTUAL
PROTECTION AND INDEMNITY ASSOCIATION
INC.,
                                    Defendant.
-----------------------------------------------------------------X

## COMPLAINT
(with jury demand)

Plaintiff, Progress Bulk Carriers ("PBC"), by its attorneys Bennett, Giuliano, McDonnell & Perrone, LLP, as and for its Complaint against Defendant, American Steamship Owners Mutual Protection and Indemnity Association Inc. (the "American Club" or "Club") respectfully alleges on information and belief as follows:

### JURISDICTION AND VENUE

1.    This is an action for, *inter alia,* contract damages, presenting questions of insurance coverage under an admiralty or maritime contract of liability insurance and thereby comes within the admiralty and maritime jurisdiction of the United States District Court, pursuant to 28 U.S.C. §1333, within the meaning of Rule 9(h) of the Federal Rules of Civil

Procedure, and within the admiralty and maritime and/or supplemental jurisdiction of the United States and of this Honorable Court.

2.  As set forth below, there is also complete diversity or citizenship between Plaintiff and Defendant, and the amount in controversy, exclusive of interest and costs, in excess of $100.000.00.

3.  This Court had subject matter jurisdiction over the instant dispute pursuant to U.S.C. §1332.

4.  This is an action for, *inter alia,* declaratory relief and is filed under and pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §2201, *et seq.*

5.  An actual controversy of a justiciable nature has arisen and now exists between Plaintiff and Defendants concerning their respective rights, obligations, and/or other legal relations under a certain contract of marine insurance. Depending on the construction of said contract, the aforesaid controversy can be determined by a judgment of this Court, without further suit.

6.  The Defendant resides in this judicial district within this State and, therefore, venue is proper pursuant to 28 U.S.C. §1391(b).

7.  Plaintiff demands a jury trial on all causes of action herein.

### PARTIES

8.  Plaintiff was and is, at all times relevant, a corporation duly organized and existing under and by virtue of the laws of the Bahamas with its principal place of business located at Montague Station Centre, 3rd Floor, East Bay Street, Nassau Bahamas.

9.  Plaintiff at all times relevant herein, was, and still is, in the business of commercial marine shipping.

10. At all times relevant herein, defendant American Club maintained its principal place of business at One Battery Park Plaza, New York, New York.

11. At all times relevant herein, defendant American Club was and is incorporated under the laws of the State of New York and was, and still is a mutual marine insurance association.

12. At all times relevant herein, defendant American Club regularly did and still does solicit business, and engages in a persistent course of conduct and/or derives substantial revenue from goods used or services rendered in the State of New York.

## BACKGROUND FACTS

13. Defendant American Club provides Protection and Indemnity coverage to the members of its mutual marine insurance association.

14. Protection and Indemnity insurance generally provides cover to shipowners and charterers against third-party liabilities encountered in their commercial operations.

15. Every holder of a Certificate of Entry issued by defendant American Club is a member of the mutual marine insurance association.

16. On, about, or before 20 January 2003, defendant American Club issued Certificates of Entry to Plaintiff for cover to commence 20 February 2003, with a renewal date of 20 February 2004.

17. PBC was a member of the American Club from 1998 to 2007.

18. The Protection and Indemnity insurance coverage provided by defendant American Club is set forth in defendant's Rules and the Certificates of Entry.

19. The Club's Rules in effect and relevant to the dispute between PBC and the Club provided in relevant part:

> **RULE 2 RISKS AND LOSSES COVERED**
> Each Member of the Association shall be indemnified in connection with each vessel entered in the Association for Protection and Indemnity insurance against any loss, damage or expense which the Member shall become liable to pay and shall pay by reason of the fact that the Member is the owner (or operator, manager, charterer, mortgagee, trustee, receiver or agent, as the case may be) of the insured vessel, subject to the provisions of these Rules and to all the limitations herein stated or agreed to by the acceptance of the application for membership, or by the entry of the vessel, in the Association, and which shall result from the following liabilities, risks, events, occurrences and expenditures arise in respect the Member's interest in such vessel; and in connection with the operation of such vessel by or on behalf of the Member; and out of events occurring during the period of entry of such vessel.

20. Per the terms of the Certificates of Entry issued to PBC, defendant American Club provided coverage to PBC in the amount of Ten Million Dollars ($10,000,000).

21. The deductible for the Protection and Indemnity coverage provided to PBC was Five Thousand Dollars ($5,000).

*(a) The Charter Parties*

22. PBC, as charterer, and FESCO, as owner, entered into a NYPE charterparty on 22 October 2002 for the Russian flagged vessel called the M/V CHERKASSY (referred to herein as the "Vessel"), a bulk carrier, built in 1984, with a deadweight of 23,181 tons.

23. PBC thereafter sub-chartered the Vessel to Schuyler Line Navigation Co. (hereinafter "Schuyler") on 14 May 2003 under a GENCON charter party.

24. Schuyler was and still is a Club member.

*(b) The Voyage*

25. The Vessel was ordered by Schuyler to Matanzas Venezuela to load 20,000 metric tons of steel products.

26. A notify party for part of the shipment was Minmetals Steel Co. Ltd. (hereinafter "Minmetals"). The Vessel arrived at Mantazas on 22 May 2003 and commenced loading.

27. All of the steel consigned to Minmetals, which was a part of the entire shipment, was required to be loaded, and was in fact loaded, on or before 30 May 2003 under the terms of its contractual agreement with the ultimate Chinese receivers of the cargo.

28. The Mate Receipts issued by the Vessel recorded May 30, 2003 as the date loading was complete. Shore Tally records, shipper's surveyor SGS, and the attending P&I surveyor who conducted the cargo preloading survey for FESCO confirmed that the steel consigned to Minmetals was loaded before May 30, 2003.

29. Loading of the Vessel was completed by 5 June 2003.

30. The Vessel departed Mantazas on 6 June 2003.

31. Between the June 6, 2003 departure of the Vessel from Mantazas, Venezuela and its arrival in Changshu, China, the steel market plummeted.

32. SCB issued a Member Alert on 26 June 2003 advising that, as a result of the fall in the price of Chinese imported steel, a number of shipowners carrying steel to China were experiencing significant problems.

33. The Club advised that Chinese importers/receivers, *i.e.*, Minmetals, were seeking ways to avoid paying for cargoes under their sales contracts. *Specifically, the Club mentioned that the receivers had been falsely alleging that the dates of shipment were mis-described.*

34. This is exactly what Minmetals had, in fact, alleged in the Chinese proceedings. SCB was fully aware that Minmetals' claim was bogus.

35. Minmetals, prior to the arrival of the Vessel in the port of Changshu, China, on 27 July 2003, commenced an action against FESCO in the local Chinese court alleging that its cargo of 551 steel coils was not loaded before 30 May 2003 and that the Bills of Lading were ante-dated. Minmetals claimed that they had lost the right to reject the cargo because the Bills of Lading were backdated resulting in a loss of $572,345.97.

36. Neither FESCO nor PBC parties to, or were aware of any deadlines in, the Minmetals sales contract.

(c) *The Chinese proceedings*

37. The local Chinese Court ruled in favor of Minmetals/Chinese receivers holding that the Bills of Lading were ante-dated and entered judgment in the amount of $446,601.56 against FESCO.

38. PBC was not a party in the Chinese litigation.

39. FESCO appealed the Chinese judgment. The appeal lay dormant in the Chinese Appellate Court for three years. The Chinese Appellate Court refused to rule and, instead, put pressure on the parties to negotiate a settlement. The matter between FESCO and the Chinese Receivers was eventually settled for $150,000, inclusive of attorney's fees and interest.

40. Minmetals and the Chinese receivers knew the claim of ante-dated Bills of Lading was meritless and settled the judgment for 33% of the judgment's value after four years of litigation, inclusive of interest and attorneys' fees,.

41. The settlement between FESCO and Minmetals was agreed to on 15 April 2008.

(d) *FESCO's claim against PBC*.

42.     Shortly after the Chinese proceedings were commenced, FESCO commenced arbitration against PBC claiming indemnity for any damages/liability FESCO would incur in the Chinese proceedings.

43.     FESCO was covered by a United Kingdom Protection and Indemnity Club ("P&I Club") which arranged for FESCO's defense in the Chinese proceedings and in the arbitration proceedings in London. FESCO's P&I Club is also a member of the International Group, as is Defendant American Club. Members of the International Group utilize the same pool coverage and similar coverage terms. FESCO's P&I Club maintained coverage for FESCO's claim.

44.     The arbitration between FESCO and PBC was dormant for years until the settlement between Minmetals and FESCO was reached in April 2008. Thereafter, FESCO moved forward with the London arbitration.

45.     On 5 July 2010 the London arbitrators issued an award in FESCO's favor as against PBC in the sum of $189,462.31, plus interest and legal costs including costs incurred by FESCO in the Chinese proceedings.

46.     The London arbitration Tribunal acknowledged that Minmetals was "spoiling for a fight" because of the collapse in steel prices during the subject voyaged and noted that a number of shipowners carrying steel to China were experiencing significant problems.

47.     The London arbitrators specifically held that:

> "crucial cargo documents **[were] not inaccurate** as to the date by when the cargo had been loaded. There was therefore no inaccuracy in the Bills of Lading that would have justified a valid rejection of the goods under the sale and purchase contract."

48.     The London arbitrators further held that it

>"followed that the Owners were, prima facie, entitled to be indemnified against the consequences of the master complying with the Charterers' orders and directions. "

(e) *Correspondence with the Club.*

49. SCB was aware of prior meritless claims arising in China related to steel imports.

50. By fax dated April 2, 2004, counsel for FESCO wrote to SCB stating that the contention that the Bills of Lading were ante-dated was being heavily contested by FESCO in the Chinese litigation and that documents confirmed that loading of the subject steel coils took place between the 23rd and 30th of May, 2003.

51. By fax dated April 29, 2004 counsel representing FESCO again wrote to SCB advising them of the claim and advising that it was in PBC's interest that FESCO defeat the claim being brought against FESCO and asked for the Club's cooperation.

52. By fax dated May 17, 2004 The Club advised PBC's manager that FESCO was strongly contesting the allegations that the Bills of Lading were predated.

53. By email dated December 17, 2004 SCB advised that if PBC could show that they were innocent victims a claim under the Club's Omnibus clause might be successful in providing coverage to PBC.

54. By email dated January 2, 2008 SCB wrote to PBC advising "as you know cover in relation to claims arising from the antedating of Bills of Lading will not be recoverable from the Club unless the directors in their discretion agree – see the Club's Rule 2, Section 7, Provision C, (iii).

55. By email dated October 28, 2010, SCB wrote "[a]lthough the tribunal found that the Bills of Lading were not antedated, it nonetheless held PBC liable to FESCO for an implied indemnity under the head charter party for the amount of the settlement, along with interest,

arbitration costs, and FESCO's as yet unquantified legal fees in both the Chinese and London proceedings."

56.	SCB further wrote "PBC questions the Club's denial of cover on the basis of that the London tribunal specifically found that the Bills were not ante-dated; instead, the tribunal found the member liable to FESCO under the implied indemnity of Clause 8 of the charter party."

57.	SCB then wrote that regardless of the specific theory on which the tribunal found PBC liable, FESCO's claim against PBC is based entirely on the Chinese court's conclusion that the Bills of Lading in fact were antedated.

58.	SCB's basis for its decision to advise the American Club to deny coverage is wrong.

59.	The sole basis of PBC's liability to indemnify FESCO was an indemnity implied into the charter party and arising from the lawful and proper orders of PBC as to the employment of the vessel given under Clause 8 of the charter party.

60.	The implied indemnity arose out of liabilities incurred by FESCO in following the orders of PBC, but did not require, and there was no finding of, any breach of charter party or wrongful act by PBC.

61.	In addition, had the Bills of Lading in fact been ante-dated, the Tribunal would have found in PBC's favor. PBC was an innocent party.

62.	The idea that the Chinese Court's holding could be binding on PBC is not legally supportable. The decision of the Chinese Court was in fact under appeal, and FESCO's ultimate liability was founded on a settlement rather than the Court's decision. Neither the legal theory of res judicata or issue preclusion applied to PBC as respects the Chinese Court's decision.

9

63. PBC's liability to FESCO was not founded on any finding that the Bills of Lading were ante-dated.

64. The London Tribunal expressly found, "The crucial cargo documents were therefore not inaccurate as to the date by when the cargo had been loaded."

65. It was this express finding that Bills of Lading were not ante-dated which gave rise to PBC's liability in this matter.

(f) *PBC's cover claim.*

66. Pursuant to the Rules of the American Club, by letter dated March 22, 2011 PBC filed a letter with the Board of Directors of the American Cub of the decision by the manager to recommend to the American Club that there was no cover for Far Eastern Shipping Company's (hereinafter "FESCO's July 2010 arbitration award against PBC (the "FESCO Award")).

67. PBC's claim is a covered claim under the American Club's Rules.

68. PBC requested that the Board of Directors not follow its manager, SCB's, advices that the Club not provide cover to PBC and, in the alternative, declare that there is coverage or in the alternative exercise its discretion under the Omnibus Clause and provide coverage to PBC for its claim because PBC was an innocent party.

69. Pursuant to SCB's email of March 31, 2011 and, in accordance with the procedure for adjudication of such disputes by the Club's Board of Directors noted therein, PBC filed its papers and supporting Exhibits.

70. PBC's appeal of SCB's decision finding that cover did not exist followed.

71. On November 17, 2011, based upon the advice of SCB, the Club denied cover to PBC for the claim on the grounds that it believes FESCO's arbitration award involved ante-dated Bills of Lading for which cover is expressly precluded under the Club's Rules.

72. The Club relied solely on Rule 2, Sections 7(c) (iii) of the Club's Rules.

73. The Club, based on SCB's advices, improperly denied coverage. The Club's decision to deny coverage was arbitrary, capricious and made in bad faith.

74. The Club's reliance on the Chinese Court's findings (which were subject to appeal) was arbitrary and self-serving. PBC did not take part in Chinese proceedings and its interests were not protected in the Chinese proceedings. PBC incurred liability per the London Tribunal on precisely the opposite finding, i.e., that the Bills of Lading were not ante-dated.

75. The rights and obligations between FESCO and PBC were determined in the London arbitration, which held that there was no ante-dating of Bills of Lading and that PBC owed an indemnity to FESCO.

76. Because PBC's liability to FESCO was not based upon an ante-dated Bill of Lading the Club's reliance on Rule 2, Section 7(c)(iii) is improper.

77. Cover must be afforded to PBC based upon, among others, the following clauses contained in the Club's Rules.

> Class 1 - P&I Insurance
>
> Rule 2       RISKS AND LOSSES COVERED
>
> Each Member of the Association *shall be indemnified in connection with each vessel entered* in the Association for Protection and Indemnity insurance *against any loss, damage or expense which the Member shall become liable to pay and shall pay by reason of the fact that the Member is the owner (or operator, manager, charterer, mortgagee, trustee, receiver or agent, as the case may be) of the insured vessel, subject to the provisions of these Rules and to all the limitations herein* stated or agreed to by the acceptance of the application for membership, or by the entry of the vessel, in the Association, and which shall result from the following liabilities, risks, events, occurrences and expenditures; provided that such liabilities, risks, events, occurrences and expenditures arise in respect of the Member's interest in such

11

vessel; and in connection with the operation of such vessel by or on behalf of the Member; and out of events occurring during the period of entry of such vessel.

\*   \*   \*

Rule 2 Section 7   CARGO

Liabilities and costs set out in subsections 1 to 4 below when and to the extent that *they relate to cargo intended to be or being or having been carried in an insured vessel.*

1. <u>Loss, Shortage, Damage or Other Responsibility</u>

   *Liability for* loss, shortage, damage or *other responsibility arising out of any breach by the Member,* or by any person for whose acts, neglect or default he may be legally liable, of his obligation properly to load, handle, stow, carry, keep, care for, discharge or deliver the cargo or out of unseaworthiness or unfitness of the insured vessel.

\*   \*   \*

Section 19   'OMNIBUS' CLAUSE

*Liability for costs and expenses **not expressly excluded elsewhere in these Rules**,* incidental to the business of owning, operating or managing ships which the Directors, in their sole discretion, shall consider to fall within the scope of the insurance protection afforded by the Association under these Rules.

\*          \*          \*

78. All conditions precedent to the filing of this action have been met by PBC, including exhausting all administrative steps required by the Club Rules.

## AS AND FOR PLAINTIFF'S FIRST CAUSE OF ACTION

79. Plaintiff repeats and re-alleges all allegations set forth in paragraphs "1" through and including "77" as if fully set forth herein.

80. At all times relevant, Plaintiff was an insured of Defendant under the terms and conditions of the Certificate of Entry and Club Rules.

81. At all times relevant, Plaintiff paid the required premiums and the Protection and Indemnity coverage afforded by Defendant American Club pursuant to the Certificate of Entry and Club Rules was in full force and effect.

82. Plaintiff has duly performed all of the conditions of the Certificate of Entry and Club Rules on its part to be performed and in accordance with the terms therein.

83. Plaintiff is entitled to coverage under the Rule of the Club for liabilities that arose from the FESCO judgment. Further the Defendants have knowingly waived any term and/or condition in the Certificate of Entry and Club Rules that would otherwise preclude coverage for Plaintiff's claim for indemnification for its losses arising from, and including, the FESCO judgment.

84. As a result of Defendants' representations and/or misrepresentations, which Plaintiff relied upon, Defendants are estopped from asserting any term and/or condition in the

Certificate of Entry and Club Rules that would otherwise preclude coverage for Plaintiff's claim for indemnification of its losses arising from, and including, the judgment entered in the FESCO arbitration.

85. Defendant American Club, wrongfully denied indemnifying Plaintiff for its losses arising from, and including, the judgment entered in the FESCO arbitration.

86. Defendant American Club, breached the terms of the Certificate of Entry and Club Rules by denying indemnification to Plaintiff for its losses arising from, and including, the judgment entered in the FESCO arbitration.

87. The failure and/or refusal by the Defendants to indemnify Plaintiff for the full amount of its loss arising from, and including, the judgment entered in FESCO, constitutes a breach by the Defendants of their obligations under the Certificate of Entry and Club Rules and entitles Plaintiff to recover damages, including general, consequential, and special damages, in the full amount of its loss to be proven at trial.

88. As a result of the Defendant's breach of the terms and conditions of the Certificate of Entry and Club Rules, Plaintiff has sustained general damages in an amount no less than the defense costs incurred, and judgment, award, and/or settlement paid, in connection with the FESCO arbitration.

89. Plaintiff is entitled to an award of consequential damages, in an amount to be determined at trial, for Defendants' failure to fulfill their obligations under the Certificate of Entry and Club Rules.

## AS AND FOR PLAINTIFF'S SECOND CAUSE OF ACTION

90. Plaintiff repeats and re-alleges all allegations set forth in paragraphs "1" through and including "86" as if fully set forth herein.

91. An actual controversy has arisen and now exists between Plaintiff and Defendants concerning their respective rights, obligations, and/or other legal relations under the Certificate of Entry and Club Rules. Plaintiff contends that it complied with all material terms of the Certificate of Entry and Club Rules, in particular but not limited to, providing timely notice of the FESCO arbitration award and complying with all administrative proceedings and, therefore, is entitled to commence this action and seek indemnification from Defendant American Club.

92. Accordingly, Plaintiff desires a judicial determination of its rights and duties under the Certificate of Entry and Club Rules with respect to this controversy. This declaration of rights and duties of the parties is necessary and appropriate at this time in view of the controversy between the parties.

## AS AND FOR PLAINITFF'S THIRD CAUSE OF ACTION

93. Plaintiff repeats and re-alleges all allegations set forth in paragraphs "1" through and including "89" as if fully set forth herein.

94. New York enacted New York General Business Law section 349 (the "Act") to protect consumers from unfair, deceptive, and/or fraudulent business practices. The Act provides consumers with a private right of action.

95. The Act creates a cause of action against those who engage in deceptive acts and practices.

96. Defendants American Club engaged in a general business pattern and practice directed to insureds like and including Plaintiff that are deceptive and misleading in a material way, including, among other things, by:

    (a) Unreasonably refusing to pay any or all of Plaintiff's damages; and

    (b) Asserting an unreasonable interpretation of the Certificate of Entry and/or Club Rules, which if adopted, would make the coverage illusory.

97. Additionally, there is implied in the contract between Plaintiff and Defendants, that this is the Certificate of Entry and Club Rules, a covenant of good faith and fair dealing wherein Defendants covenanted that they would, in good faith and in the exercise of fair dealing, deal with Plaintiff fairly and honestly and do nothing to impair, interfere with, hinder, or potentially injure the rights of Plaintiff to receive the benefits of the Policy. Defendants accepted a duty to honor said contractual obligations by entering into the herein referred contract of insurance.

98. At the time of the issuance of the aforementioned contract of insurance, or prior thereto, the Plaintiff and the Defendants contemplated that if Plaintiff may be held liable for some act of omission covered by the aforementioned contract of insurance, then the Defendants owed Plaintiff a duty to defend it in that suit.

99. At the time of the issuance of the aforementioned contract of insurance, or prior thereto, it was foreseen by the parties, or should have been foreseen by the Plaintiff and the Defendants, that Plaintiff would incur attorneys' fees and costs to compel Defendants to comply with its contractual duty to defend and indemnify Plaintiff.

100.   Plaintiff reasonably expected that the Defendants would fulfill their duty and promise to defend and indemnify Plaintiff, which was contemplated at, or prior to, the issuance of the aforementioned insurance contract.

101.   Defendants breached their covenant of good faith and fair dealing by wrongfully declining to defend and indemnify Plaintiff.

102.   Additionally, under New York law, an insurer such as Defendant American Club, may be liable to its insured, such as Plaintiff, for bad faith refusal to pay the benefits of its insurance contract. As noted, Defendant American Club, refused to indemnify Plaintiff for its losses arising from, and including, the judgment entered in the FESCO.

103.   Plaintiff has been injured by reason of Defendants' aforementioned conduct in a sum to be shown by proof at trial.

104.   Defendants American Club is liable to Plaintiff for all compensatory damages, consequential demands, trebled and punitive damages, attorneys' fees, and interest that Plaintiff has and may sustain as a result of Defendants' unfair, deceptive, and/or fraudulent business practices.

## AS AND FOR A FOURTH CAUSE OF ACTION

105.   Plaintiff repeats and re-alleges all allegations set forth in paragraphs "1" through and including "101" as if fully set forth herein.

106.   Pursuant to the Club Rules after the manager provides its advices on coverage to the Board of Directors, all requests that the Board of Directors not follow the advice of its manager relating to coverage are to be presented to and decided by the full Board of Directors.

107.   The full Board of Directors did not hear or decide PBC's coverage issue and, thus, the Club breached its Rules and its decision is null and void.

108.    As a result, PBC's claim must be deemed covered.

**WHEREFORE**, Plaintiff demands judgment against Defendant on its first, second, third and fourth causes of action in the amount of its general and consequential damages, with interest, and for a judicial declaration that Plaintiff complied with all material terms of the Certificate of Entry and Club Rules and, therefore, is entitled to indemnification from Defendant for its compensatory damages, consequential demands, trebled and punitive damages, attorneys' fees, and interest, all together with the costs and disbursements of this action, together with such other and further relief as this Court may deem just and proper.

Dated: New York, New York
January 6, 2012

Bennett, Giuliano, McDonnell & Perrone, LLP
*Attorneys for Plaintiff Progress Bulk Carriers*

_____
William R. Bennett, III
494 Eighth Avenue, 7th Floor
New York, New York 10001
Telephone: 646-328-0120
Facsimile: 646-328-0121